## Pennock's Appeal.

1. The employment of a bidder merely to raise the price at a sale of real estate made under an order of the Orphans' Court, is a fraud upon the purchaser. The case of Steel *v.* Ellmaker, 11 *Ser. & R.* 86, overruled.

2. One of several administrators may bid at a sale of real estate, made by them under an order of the Orphans' Court, subject, in the event of a sale to him, to the power of disaffirmance by heirs or creditors: other bidders have no right to disaffirm the act, where the bidding was in good faith.

APPEAL from the decree of the Orphans' Court of *Delaware county.*

This was an appeal by Abraham L. Pennock, and James Sellers from the decree of the Orphans' Court of Delaware county, in the matter of the sale of the real estate late of Abram Powell, deceased, for payment of debts.

Nov. 27, 1849, the said Orphans' Court granted an order to Elizabeth Powell, John B. Powell, and Joseph Powell, administrators of the said Abram Powell, deceased, to make sale of the real estate of said deceased, for the purpose of the payment of debts.

In pursuance of the power given by said order, said administrators did, on the 27th day of December, in the year aforesaid, expose the said real estate to public sale, and sold tract designated A (the mill property) in the order, to said Abraham L. Pennock and James Sellers, for the sum of $4000, and sold tract designated C in said order, to said Abraham L. Pennock and James Sellers, Jr., for the sum of $3000.

The written conditions of sale, were:

1st. The highest and best bidder shall be the buyer.

2d. One hundred dollars of the purchase-money to be paid immediately upon the property being struck off to the purchaser, and the remainder upon the 25th day of March next, when possession will be given, and a deed executed at the purchaser's expense.

[Pennock's Appeal.]

3d. The purchaser to be responsible for all losses by any subsequent sale, if such sale should be necessary by reason of his not complying with the above conditions.

To the said order of sale, said administrators, on the 25th day of February, 1850, made the following report to said court:

That under and by virtue of the annexed order of sale, having first given due and timely notice of the time and place of sale, they did, on the 27th of December, last past, expose the real estate, in the order described, by public vendue, or auction, for cash; whereupon Abraham L. Pennock and James Sellers, Jr., became the purchasers of tract A in said order, for the sum of $4000. And the said Abraham L. Pennock and James Sellers, Jr., did become the purchasers of tract designated C in said order, for the sum of $3000, they being the highest and best bidders for the said tracts, and the above sums the highest and best prices bidden for the same.

The sale was confirmed *nisi* by said court, on Feb. 25th, 1850, and the following exceptions to the confirmation of the sale of tract No. 1 (A) was filed the same day. This was the mill property.

1st. The administrators of said deceased, or some of them, engaged and employed a puffer or puffers to bid at and greatly enhance the price of said real estate, struck off to the exceptors, Abraham L. Pennock, and James Sellers, and that the bids made by the persons who made the bids at the instance of the administrators, did not make such bids with the intention of purchasing the real estate, but for the object and purpose of running the price up on the *bona fide* purchasers.

2d. That by reason of the puffing and false bids of the person or persons employed by the administrators, the price of the real estate was enhanced to the amount of six or eight hundred dollars above what the same would have sold for, had none bid but persons who bid with the intention to purchase.

3d. That the said real estate was struck off to the exceptors at the sum of $4000, which is greatly above the just value of the same, and greatly more than they would have bid, except against other bidders, who bid with a design to purchase.

4th. That said puffing and false bids were made without the exceptors and other persons present at the sale having any knowledge of the nature and object of the bids; on the contrary, the administrators, or their agent the auctioneer, informed the bidders and persons assembled, that there should be no underbidding or puffing.

At the same time, exceptions, substantially of the same character, were filed to the confirmation of the sale of tract C.

Testimony was taken under an order of the court.

As to tract designated C, it was testified by Elizabeth Powell, one of the administrators, that she authorized Joseph Powell to

bid for her, and to go as high as about $100 per acre. After the sale, he said he had bid for me. Nothing was said between us about the payment. I intended to take the property, if it had been struck off to Joseph Powell. I had no conversation with Abraham L. Pennock or James Sellers, Jr., concerning the bids on the property.

The *crier* testified, that after the tract A (the mill property) was put up a second time, John Sellers made the first bid, which was $3050 or $3450; and that after he bid, the only bidders were Abraham L. Pennock and Joseph Hibberd. That the tract was struck off to Pennock for $4000. That he, the crier, proclaimed, at the outset of the sale, that it would be a fair sale: that this was done with the assent of one of the administrators.

Joseph Hibberd testified that he was the guardian of the minor children of Abram Powell. He said we had among ourselves fixed $4000 as a limit under which we would not sell the mill property. The sale of it was stopped, and it was put up again. When it got to $3400, it dwelt awhile, and Joseph Powell told me to go and bid. He told me to bid, and bid out. I bid out loud enough for all to hear who were on the ground. I bid by nodding, after the first bid. "My bids were to *help the property up to the price we wanted for it.* It was knocked off at $4000. I don't think that a *high price,*" &c. He further said, that I did not tell Abraham L. Pennock, or James Sellers, Jr., or make it publicly known in bidding for tract A, what my object was.

Other testimony, and different opinions were expressed as to the value of the property.

CHAPMAN, J., observed, *inter alia:*

That there was a conflict of decisions in the English courts, and that he would follow the doctrine indicated by our own courts, which he considered to be, that a bidder may be privately appointed by the owner to prevent the estate from being sold at an under value. That there was a difference between employing one and two or more persons to bid; that to prevent a sacrifice, one is sufficient, but if more are employed, the inference is strong that the object is to impose on the purchaser. That a sale "to the highest and best bidder," and a sale *without reserve,* are not the same; that under the former, there is an implied understanding that the seller has a right to bid in the property, but that a sale "without reserve," *ex vi termini* excludes the idea of the seller's bidding.

The exceptions were dismissed, and the sales confirmed.

Pennock and Sellers appealed.

It was assigned for error, that the court erred in dismissing the exceptions to the report and confirmation of the sales of tracts A and C, and in decreeing a confirmation of the sales of said tracts.

[Pennock's Appeal.]

The case was argued by *E. Darlington,* for appellants.—He contended that the sales were fraudulent, and should have been set aside. That in Bexwell *v.* Christie, *Cowp.* 395, decided in 1776, Lord MANSFIELD decided that the employment of a secret puffer was a fraud upon the public. He also referred to Howard *v.* Castle, 6 *Term Rep.* 642; Blashford *v.* Preston, 8 *Term Rep.* 93; Crowder *v.* Austin, tried in 1825, before BEST, C. J., in which it was said, the purpose of employing a bidder must be declared *in the conditions of sale:* 2 *Car. & P.* 208; 12 *E. C. L.* 92; 3 *Bing.* 368; *Sugden on Vendors,* 16; 6 *W. & Ser.* 13; 2 *Kent's Com.* 539; Wheeler *v.* Collier, 1 *M. & M.* 123; 22 *E. C. L.* 266; Thornet *v.* Haines, 15 *Mee & Wells,* 366, decided in 1846; 8 *Howard* 134; Veazie *v.* Williams, 13 *Lou. Rep.* 287; Meadows *v.* Tanner, *Madd. Rep.* 34.

*Broomall* and *W. Darlington,* for appellee, contended that *fraud* is the only ground of relief, and that no fraud existed in this case; and that it is not illegal to employ a bidder to prevent a sacrifice: *Sugden on Vendors,* 29; Bramley *v.* Alt, 3 *Ves. Jr.* 620–624; Conoly *v.* Parsons, 3 *Ves. Jr.* 625, 628; Smith *v.* Clarke, 12 *Vesey* 477; Steel *v.* Ellmaker, 11 *Ser. & R.* 86, 2 *Coms. R.* 821; Jenkins *v.* Hogg; Wheeler *v.* Collins, 1 *Moo. & M.* 123. In Crowder *v.* Austin, 3 *Bing.* 368, the bidding was merely *to enhance the price.* In Thornet *v.* Haines, 15 *M. &. W.* 367, the sale was *without reserve.* That in Steel *v.* Ellmaker, 11 *Ser. & R.,* C. J. TILGHMAN has reviewed all the cases at law and in equity, and adhered to the reasoning and authority of the latter.

*Lewis,* in reply, for appellants.—The fact that the property was not sold above its value is not material: Robinson *v.* Wall, 2 *Phillips' Rep.* 372. Under bidding is a fraud in law, and the only case where it is allowable is where there is a reservation in the conditions. The property may be withdrawn. The vendor has a *locus penitentiæ,* as well as the vendee, till the property is struck off. See 2 *Phillips* 372. The case of Bexwell *v.* Christie has been overruled: 2 *Kent's Com.* 539; *Story's Com.*

There is no difference in principle between employing one and more bidders. In Baham *v.* Bach, 13 *Lou. Rep.* 287, there was but one bidder.

The opinion of the court was delivered by

GIBSON, C. J.—It is impossible to doubt the principle of the civil law adopted by Lord MANSFIELD, in Bexwell *v.* Christie. Good faith is an indispensable ingredient of fair dealing; and it is impossible to imagine a purpose, consistent with it, for which sham-bidding is necessarily employed. The vendor may prescribe conditions of sale which will enable him to retain the property should

[Pennock's Appeal.]

it not come up to his price; and if he do not produce the effect openly, why should he do it covertly? Common honesty requires that all should be fair and above-board. To screw up the price, as it has been aptly termed, by secret machinery, can be no less than a fraud; and a sham-bidder can be used for no other purpose. The decisions on the subject have fluctuated; but the largest license allowed in any of them has been to employ a single puffer: yet, whether there be one, or whether there be twenty, the mischief is the same, except as to the degree of it. It has been said that the employment of a plurality discloses too clearly to be mistaken, not a design to protect the property from being sacrificed, but to give an artificial impulse to the sale of it. That touches the honesty of the vendor's motive; but what have the bidders to do with it? Should he actually think that not less than twenty could protect it, the sale would still be, according to all the cases, fraudulent and void. It is not his motive, but his acts, by which they are affected; and these present a question, not of actual, but of legal fraud. In a treaty for a private sale, the vendor may praise his property without stint, because his interest in the price of it is so obvious as to put the vendee on his guard, who consequently purchases, not on the faith of the vendor's representation of its value, but on his own judgment; but in a public sale, especially of land, which has no standard of value in the market, he is necessarily influenced by the bids of those whose interest it is to get the property at the smallest price. Timid bidders are emboldened by decided ones; and to employ a decoy-duck to inspire them with false confidence, is grossly immoral. The very excitement of competition has its influence, and it is unfair to increase it by introducing a man of straw.

It is wonderful how slowly the most obvious truths are perceived and admitted. The plain and simple morality of the gospel required a revelation. Even in my day at the bar, it was the constant practice of the Orphans' Courts to allow a charge in administration accounts for the price of strong drink, furnished avowedly to stimulate the bidders at the sale of the decedent's effects.

The weight of authority is now, as it was at first, in favor of the true principle. Whatever may have been the state of the balance when Mr. Sugden collected the cases in his treatise on vendors, his own opinion evidently coincided with that of Lord MANSFIELD; and Chancellor KENT expressly adhered to it. Against Bramley *v.* Alt, Conoly *v.* Parsons, Smith *v.* Clarke, and Steele *v.* Ellmaker, we have, in addition to Christie *v.* Bexwell, and Howard *v.* Castle, the modern cases of Crowder *v.* Austin, Wheeler *v.* Collier, Thornet *v.* Haines, Meadows *v.* Tanner, and Veasie *v.* Williams. After the English judges have overruled three of their decisions to restore the principle of the civil law, we ought not to be tenacious of our single one. I concurred in the decision of Steele *v.* Ellma-

[Pennock's Appeal.]

ker exclusively on the foundation of precedent; but the balance of authority is conclusively the other way, and that case has neither principle nor precedent to support it.　Chief Justice TILGHMAN did not doubt Lord MANSFIELD's decision—he said that none of the courts had gone so far as to affirm that it is not law—but he doubted whether the rule of the civil law was not too severe to be applied to the transactions of business.　The duties and obligations of the civilians are often too nice for modern use; but this is not one of them.　The rule is exactly defined; and it may be practically applied, without let or hindrance, to every case without exception.

The objection to the sale of the tract designated as letter C, is not sustained.　The bids alleged to have been spurious on it, were made by an agent of the widow, who, though an administratrix, had a right to purchase, subject to the power of disaffirmance in the heirs or creditors.　The other bidders had no right to disaffirm her act; and her bids, made through her agent, were in good faith. The argument would have been more plausible had she been utterly incapacitated; but as a sale to her would have been but voidable and probably confirmed, there is no room to say she was not a *bona fide* bidder.

It is ordered and decreed that the sale of the tract designated by the letter A be set aside; and that the decree of confirmation be affirmed for the residue.