## Staines *versus* Shore.

1. In an action on a note given for the price of a horse sold at auction, where fraud is alleged as to the condition of the animal at the time of sale, the presumption is very slight that the horse was unsound when fully grown, and apparently vigorous, because it had been diseased when a colt; the jury are to judge of the soundness or unsoundness, from the evidence exhibited in the case.

2. There can be no deceit in the sale of a chattel without a *scienter*.

3. The employment of a puffer by the seller to bid for him at an auction vitiates the sale, and it is not material whether the property purchased brought no more than its *general value;* a purchaser has a right to purchase at an under value if he can.

4. When the employment of a puffer has been discovered by the purchaser after the sale, it is his duty to offer to return the property purchased, when the fraud is discovered; but if not discovered till too late to do so, the purchaser's defence is good without it.

ERROR to the Common Pleas of *Huntingdon county*.

This was an appeal from the judgment of a justice of the peace in an action of debt, by Shore *v.* Staines & Kough, on a note for $69.50, dated 18th March 1847, given by Staines & Kough to Shore for a horse sold by Shore, and purchased by Staines, at public auction. The horse died about thirty days after the sale. The purchaser did not offer to return him; but it was alleged that he believed, till shortly before the death of the horse, that he could cure him. It was further alleged that the horse was *unsound* when sold; and also that the plaintiff employed a person to bid him up at the sale.

On the part of the defendant, John Henderson was examined, and testified that the animal was cried out as a young, sound horse in every respect. That he examined him and found that he was scabby. That it was quite evident from the appearance of the skin; he considered the horse unsound at the time. He knew this colt, when a man named Martin owned him. He was in a bad condition. The horse was not much moved about at the sale. He appeared stiff.

Jeremiah Brown testified, that at the time the horse was knocked down to Staines, Aaron Shore was present, within hearing distance. One of the Shores said the man was bit. I asked the reason. The boy said the horse was unsound. Staines was present, but perhaps a little further off.

Burket, the *crier*, was examined, and said he thought he cried

[Staines *v.* Shore.]

him as a fine, sound, young horse, as far as he knew; and he looked so. That he did not know whether Shore, the plaintiff, was present.

On the part of the plaintiff, John B. Logan testified, *inter alia:*—I think on the morning of the vendue I offered Aaron Shore $55; he refused to take it. I bid him at the sale to about $63 or $64; may be a little more. He was sold at outcry in a public yard. He had nothing of farcy while I knew him. The appearance of the horse on that day was good.

Jacob Gehrett was the person who it was said was employed as puffer. He was examined on the trial, on the part of the plaintiff, and testified, *inter alia,* that Shore asked him to bid in the colt for him. That he saw the horse—he looked well. That he bid on the horse. Thought he started him at $40. That he soon went over that, and he let him go. He further said that he was to bid in the horse for Shore, the plaintiff, for $55.

On the trial, defendant's counsel submitted two points:

"1. If the jury believe that the colt, for the price of which the note in controversy in this action was given, was unsound and unhealthy at the time of the sale of the colt by Martin to Shore, the law presumes that unsoundness continued, unless it had been proven that the colt recovered its health before it was sold to defendant."

TAYLOR, J., charged that such presumption would be but slight in the present case, as the animal had grown to be a horse. Much of the evidence here relates to the growth, appearance, and apparent health of the animal during the period between the purchase by Shore and the purchase by Staines. You will .take into consideration the whole evidence—that which relates to the health of the colt before, at the time, and after Martin parted with it—what has been testified to in relation to the nature of its disease, &c.; and thus judge whether the *horse* was sound when sold to Staines.

"2. If the jury believe the evidence of Jacob Gehrett, one of the plaintiff's witnesses, and that Jacob Gehrett was employed by Aaron Shore, the owner of the horse sold, as a puffer at the public sale of the colt, to bid for Aaron Shore, and that he did so bid at the sale, the sale was fraudulent and void; and as the note for which this suit is brought was given for the horse purchased at such auction, in which Jacob Gehrett so acted as a puffer for Aaron Shore, the owner of the horse sold, the plaintiff cannot recover in this action."

We refuse to answer this point as requested. The evidence, as we recollect it, is that Shore had requested Gehrett to bid for him, and not let the horse go for less than $60; that he bid to that point, and then ceased bidding; and that afterwards he was bid by Staines and others to $69.50, and at that knocked down to Staines. Taking the facts, however, to be as assumed in this point, then it

[Staines *v.* Shore.]

would follow, we agree, that the sale at the auction was fraudulent and void; and Staines could not have been compelled to take the horse, (he refusing to do so;) that Shore could not have recovered the amount for which he was struck down *upon the bid*. But it would not still follow, *if he afterwards did take the horse, with an after opportunity for inspection, and ratify the sale by giving his single bill with security for the price, and the horse was a sound horse and worth the money, that the single bill would be without consideration*. If a sound horse at a fair price was the consideration of the single bill, then, as we have already remarked, there was, *in point of fact*, no want or failure of consideration; and it is not disputed that the horse was worth the money if sound. Whether the defence set up should, therefore, avail the defendant, must depend upon your decision of the questions of fact already submitted.

· Verdict was rendered for plaintiff for $80.65.

The charge was excepted to on part of defendants.

It was assigned for error:

1. That the court instructed the jury in substance, that although the horse was diseased at the time of the sale, and Shore asserted him to be sound, by which assertion Staines was induced to bid for him, it did not vitiate the sale, unless Shore knew the horse to be diseased at the time he made the assertion.

2. To the answers to the points submitted on part of defendant, and particularly to the part of the answer to the second which is in italics.

*Fisher*, for plaintiff in error.—That it was not material whether Shore knew that the horse was unsound. If one asserts what he does not know, he is guilty of falsehood: *Story's Eq.* 193; 9 *Watts* 55, McFarland *v.* Newman; *Oliphant on the Law of Horses, Racing &c.* 84, and notes.

[BELL, J.—There must be either a warranty or deceit.]

That it was illegal to employ a puffer: Pennock's Appeal, 1 *Harris* 446; *Babington on Auctions* 48, 49, 52.

*Cornyn*, for defendant.—The purchaser gave his note and took the horse. He kept him till he died, and he did not, at the time, allege unsoundness.

A naked affirmation is not itself an express warranty, nor evidence of it: McFarland *v.* Newman, 9 *Watts* 55. To constitute a warranty, the words must not be dubious or equivocal, but it must appear that the affirmant intended to *warrant*, and did not express a mere matter of opinion or judgment: 7 *Ser. & R.* 482. The maxim *caveat emptor* is so strictly construed that it has given rise to another principle, *simplex commendatio non obligat;* a simple

[Staines *v.* Shore.]

assertion by the vendor as to the value or quality of the goods, does not amount to a warranty: 2 *Kent* 484; *Chitty on Contracts* 134–5.

The sale of an unsound horse *without fraud or warranty*, though known to be unsound by the seller, is no defence to an action for the purchase-money: Pulhamus *v.* Pursell, 3 *Pa. L. J.*  A fair price implies a warranty of *title* in the sale of a chattel, but not a warranty of *quality*: 2 *Kent* 482.

In Bramley *v.* Alt, 3 *Vesey* 620, it was held that a sale was not fraudulent because a puffer had been employed, if there were real bidders who bid after the puffer had ceased: 12 *Vesey* 477, Smith *v.* Black.

. Fraud without damage, or damage without fraud, gives no cause of action; but where they concur and meet together, action lieth: CROKE, J., 3 *Bl. Rep.* 95.

*Blair*, on same side.

*Fisher*, in reply.—That the legality of the employment of a puffer does not depend on the price the property brought.  That the value of the horse was not a proper element in the case :. That it matters not whether the defendant got the worth of his money or not.

The opinion of the court was delivered May 26, by

GIBSON, C. J.—The direction on the first point was right: there is no deceit without a *scienter*.  On the second, it was inaccurate. We held, in Pennock's Appeal, 2 *Harris* 449, that the employment of even a single puffer vitiates the sale.  In the present case, the ruling judge instructed the jury that if the horse was actually worth the sum to be paid for him, the buyer got the value of his money and could not have been defrauded.  The fallacy of the principle is in assuming that there is a standard of value independent of the wishes and wants of the bidders, and that every man is willing to buy by it.  A man proposes to sell his horse for a fair price to another, who declines because he has no use for him, and does not choose to take the risk of getting less for him than he gave, with a certainty of losing his trouble, and the expense of keeping in the mean time; but the case would be different did the owner make it worth his while to purchase with a view to profit on a resale. What is the worth of any thing?  The apophthegm of Hudibras answers truly, "Just so much money as 'twill bring."  A man is defrauded whenever he is incited by artful means to bid more than he otherwise would.  He has a right to buy at an undervalue, where the necessities of the owner compel him to sell; and whenever the price is ever so little enhanced by a secret contrivance, he is cheated.  A sale by auction presupposes a sacrifice, or at least a willingness to sell for what can be had; but should the vendor

[Staines *v.* Shore.]

stick for the last penny, it would be idle to set the property up, because his price could be as readily obtained at private sale. Should he, however, see fit to make the experiment, his object could be attained by directing the auctioneer not to let the property go for less than his estimate of its market value; or, if he propose to sell without reservation as to price, let him openly reserve a right to bid. For no fair purpose is the employment of a puffer necessary; and it must vitiate every sale in which recourse is had to it. Had the horse lived in this case, it would have been necessary to return or tender him to the vendor as soon as the fraud was discovered; but as there is no evidence that it was discovered till it was too late for that, the vendee's defence was perfect without it.

Judgment reversed and *venire de novo* awarded.