## Thomas D. Rafferty, James L. Rafferty and John Y. Rafferty, Appellants, *v.* Isaac B. Norris.

*. Public sale—Standing timber—Employment of puffers.*

The employment of a bidder at a public sale, merely for the purpose of raising the price, vitiates the sale. The operation of this rule is not affected by the fact that the purchaser admitted that he did not bid more in consequence of the puffer's bid, nor because there were intervening bona fide bids, between the puffer's last one and the purchaser's last one, which carried the price at which the property was struck off more than $1,000 beyond the last bid of the puffer.

Argued Oct. 26, 1899. Appeal, No. 163, Oct. T., 1899, by plaintiffs, from judgment of C. P. Clearfield Co., Dec. T., 1897, No. 43, in favor of defendant, non obstante veredicto. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER, W. D. PORTER and BEEBER, JJ. Affirmed. Opinion by BEEBER, J.

Assumpsit. Before GORDON, P. J.

It appears from the record that the action was brought to recover loss sustained by refusal of defendant to comply with his contract for the purchase of standing timber which he had bought at auction.

It appears from the evidence that plaintiffs inherited from their deceased father certain timber land, and a few months after the youngest of them became of age, they advertised the

timber at public sale, and it was bought April 10, 1897, by the defendant for $5,560.

The defendant refused to comply with his bid, whereupon, he was notified that the timber would again be put up at public sale, and that he would be held responsible for any loss. The timber was again advertised and sold to other parties, April 28, 1897, for $5,375, being $185 less than the bid of the defendant.

This action was brought to recover the loss, and legitimate expenses connected with the resale, and resulted in a verdict for plaintiffs for $350, subject to a question of law reserved by the court.

John Y. Rafferty, the youngest one of the defendants, just before the sale, told Dr. Currier to bid $4,500 on the property, saying if it did not bring that price, they would not sell it. Dr. Currier made some bids ; the property was soon bid to that sum, and he ceased to bid, and it was sold for $1,060 above that sum to the defendant.    Other bona fide bidders bid within $5.00 of that sum.    On the trial of the cause, the young man said, while on the witness stand, that he had asked Dr. Currier to bid.    He did not know whether Currier had bid or not. The defendant then asked the court to rule that the bidding of Dr. Currier rendered the sale void.    Plaintiffs asked the court to rule that the bid or bids so made by Dr. Currier did not effect the legality of the sale, as the defendant admitted on the witness stand that the bids he made were not affected or influenced by the fact that Dr. Currier bid ; and that he did not at any time know Dr. Currier had made any bids.

The question as to the legal effect of Dr. Currier having bid at the request of one of the plaintiffs was reserved by the court, and all the facts submitted to the jury, who found for the plaintiffs for $350.    Rules for judgment on the verdict in favor of plaintiffs, and for judgment non obstante veredicto, and for a new trial went out, and in disposing of them the court held that judgment should be entered for defendants non obstante veredicto, from which judgment plaintiffs took this appeal.

*Errors assigned* among others were (1) refusal to affirm plaintiffs' fifth point, which point and answer are as follows : " 5. Although it may be that Dr. Currier made bids at the sale of

this timber on April 10, 1897, at the request of the plaintiffs, yet if the jury find from the evidence that it was not the purpose of the plaintiffs to practice any fraud or deception upon bidders but simply to prevent the property being knocked down much below its value, and the action of Dr. Currier did not influence or induce others to bid, and that defendant was not deceived, misled or injured by such bid or bids, it did not render the sale invalid. *Answer:* We affirm this point so far as it pertains to the question of actual fraud submitted to the jury. We have reserved the question whether the engagement of Dr. Currier to bid, and his acts at the sale, constituted a legal fraud under the evidence, and we therefore refuse the point bearing upon that question. But it is proper for the jury to consider these matters in connection with all the other evidence in the case in passing upon the question of actual fraud." (2) In directing judgment to be entered for defendant non obstante veredicto.

*Frank Fielding*, for appellants.—The defendant having testified that he was not induced to bid by reason of Dr. Currier having bid at the sale, the defendant was bound by his contract of purchase. The fact that one of the plaintiffs told Dr. Currier to bid $4,500, and that they would not let the timber go under that price, and when it reached that price Dr. Currier quit bidding, and the property was bid to $1,060 more than the sum named, by bona fide, experienced and responsible lumbermen, there was no legal fraud in the transaction. The defendant having brought suit against the plaintiff in affirmance of the contract, and he having testified that he was not influenced in bidding by the fact that Dr. Currier had bid, he cannot make that a pretext to escape the liability of his contract.

We shall not ask this learned court to reverse the decisions of the Supreme Court of Pennsylvania on the subject of the employment of " puffers " to enhance the price of property being sold at auction, nor to infringe upon the spirit of the correct interpretation of those rulings.

We do, however, respectfully and confidentially submit that the ruling of the learned judge in the court below in this case was erroneous, and should be reversed.

At the trial of the cause the defendant admitted that he was

not influenced in making his bids by the fact that Dr. Currier had bid.   How then was he deceived, or misled thereby?

We do not, as we have before stated, undertake to question the decisions of the Supreme Court of Pennsylvania, which decisions followed the English case of Bexwell v. Christie, Cowp. 395, and we respectfully submit that there has been no case decided in Pennsylvania which goes so far as to sustain the ruling of the learned judge of the court below in this case.   In Pennock's Appeal, 14 Pa. 446, which is the leading case on this question, Judge GIBSON clearly recognizes the principle for which we contend here, the sham bidding he refers to being, in the language of that decision, "to screw up prices."   Here we have none of the "decoy duck inspiration" referred to in that case.

We confidently assert and believe that we are sustained in it, that under the terms of the sale announced in this case the plaintiff had the right to say to the auctioneer, "Don't knock down the timber for less than $4,500," and that there was nothing fraudulent, illegal or immoral to say to Dr. Currier "Do not let it go for less than $4,500; if it is not bid above that we will not sell it but will operate it ourselves."   Pennock's Appeal is followed by Staines v. Shore, 16 Pa. 200, which involved the auction sale of a diseased horse that died soon after the sale, at which sale there was "puffing" and all the tricks of the jockey.

*Roland D. Swoope*, with him *William F. Patton*, for appellee. —A puffer is a person employed by an owner of property which is sold at auction to bid it up, and he does so accordingly for the purpose of raising the price upon bona fide bidders: 2 Bouvier's Dict. 794.

In the more recent case of Flannery v. Jones, 180 Pa. 338, this distinction is very clearly pointed out in the opinion of the court below, adopted and affirmed by the Supreme Court, and the salutary rule as to the effect of the employment of a puffer is recognized and enforced.

That the intention or motive inducing the seller to engage a puffer, has nothing to do with the question before the court is very clearly laid down in the opinion of the Supreme Court in Pennock's Appeal, 14 Pa. 446.

The third position taken by appellants' counsel, that the defendant having testified that he did not know that Dr. Currier was bidding, that therefore the bids made by Currier did not affect or influence him in bidding, and he has no right to rescind the sale, is not supported by a single Pennsylvania authority, as counsel for appellants very candidly admits in his argument, and we do not see how the cases of Curtis v. Aspinwall, 114 Mass. 187, Tomlinson v. Savage, 41 N. C. 430, and Reynolds v. Dechaums, 24 Tex. 174, can be reconciled with the decisions of our own Supreme Court upon this question.

In Pennsylvania the question came before our Supreme Court as early as 1824, in the case of Steel v. Ellmaker, 11 S. & R. 86.

This decision was followed by the case of Staines v. Shore, 16 Pa. 200, in which an attempt was made, as we have already shown, to do away with the effect of the decision in Pennock's Appeal, by drawing a distinction in cases where genuine bids intervened, yet the same chief justice again declared the rule to be " that the employment of a puffer must vitiate every sale in which recourse is had to it." This was followed by the case of Yerkes v. Wilson, 81* Pa. 9, and the more recent case of Flannery v. Jones, 180 Pa. 338.

*Frank Fielding*, for appellants, in reply.—No impartial person will say that it would have been a fraud upon bidders had young Mr. Rafferty told the auctioneer not to let the property go for less than $4,500. What difference, in effect, did it make that he told a bystander to not let it go for less than that sum, instead of telling the auctioneer to bid for him? The sole purpose was to prevent a sacrifice of the property, not " to screw up the price by false bids." No one will deny that the plaintiffs had the right to stop the sale at any time, because the terms of the sale did not oblige them to sell the property if they did not see fit to do so. We are sustained by both reason and authority in our position.

It is true we have not cited any case decided in Pennsylvania where facts have arisen similar to this case. If such case had arisen we cannot doubt but the decision would have been such as that for which we contend here. A case so barren of actual or legal fraud as this one, is not likely to often find its way into the courts. The citations we have made from Curtis v.

Aspinwall, 114 Mass. 187, Bank v. Sprague, 20 N. J. Eq. 159, Tomlinson v. Savage, 41 N. C. 430, Reynolds v. Dechaums, 24 Tex. 174, and 1 Benjamin on Sales (4th Am. ed.), p. 624, sec. 717, n. 48, amply sustain the position for which we contend.

OPINION BY BEEBER, J., January 17, 1900:

The appellants admit the existence of the rule that the employment of a bidder at a public sale merely for the purpose of raising the price vitiates the sale. They seek to avoid the effect of the rule in this case for two reasons, first, because defendant admitted that he did not bid more in consequence of the puffer having bid, that he had no knowledge of the puffer's bidding, that it had no effect on his bid, and second, because the evidence showed that there were intervening bona fide bids between the puffer's last one and defendant's final one, which carried the price at which the property was struck off more than $1,000 beyond the last bid of the puffer.

We do not think that either one of these reasons removes the case from the operation of the rule, which has been established and enforced without regard to the honest or dishonest motives of those who employ such bidders. An offer of property at public sale indicates at least a willingness to sell for what can be had. Purchasers at such sales are necessarily influenced by the bids of others whose interest it is to buy at the lowest price. But they are not to be exposed to the danger of being influenced by the bids of those who have no intention to buy, and who are only bidding to run the price up for the benefit of the owners. We are not surprised that the defendant admitted that he did not bid more because of the puffer having bid, in view of the fact that he did not know the puffer was bidding. It by no means follows, however, that his own and the bids of others were not influenced by the stimulating effect which the bids of the puffer might have had upon all of them. If the rule had remained as at first established in Steele v. Ellmaker, 11 S. & R. 86, which was sustained by many English cases unshaken at that time, it might be very well argued that it should not be applied unless actual injury was shown. But that rule lasted only twenty-six years when that case was distinctly overruled in Pennock's Appeal, 14 Pa. 446. From that

time the modern rule has been steadily maintained without any perceptible inclination to depart from it.   The English cases also have finally established the same rule as appears by the opinion of Mr. Chief Justice GIBSON in Pennock's Appeal, supra.   As was said in that case, " The rule is exactly defined; and it may be practically applied, without let or hindrance, to every case without exception."   To return to the old rule so as to allow all kinds of evidence to be introduced to qualify or vary its application would be a distinct step backwards which we are not inclined to take.

Nor do we think the fact that there were bona fide bids between the puffer's last one and the defendant's relieves the plaintiffs.   The same fact appeared in Staines v. Shore, 16 Pa. 200, but it did not change the rule.   If we were at liberty to follow some of the cases of the courts of final resort of other states we might conclude that this fact would save the plaintiff's case, but we regard the rule as clearly established in this state by the court whose decisions we are bound to follow. Moreover, we are quite well satisfied to maintain the rule as now established.   It is clearly and distinctly defined, and can be readily understood by all and easily applied by the courts.

Judgment affirmed.

PER CURIAM, January 17, 1900:

The above opinion was written by Judge BEEBER during his term of office as a member of this court, the case having been duly assigned to him for that purpose.   It is now adopted and filed as the opinion of the court.